# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD WILLIAM HART, | Case No. 1:14-cv-00486-SAB |
| Plaintiff, | ORDER PARTIALLY GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Donald William Hart ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 8, 9.)

Plaintiff applied for Social Security benefits due to impairments related to a learning disability, depression, and degenerative disc disease. For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is partially granted and this action is remanded to the Commissioner for further administrative proceedings.

/ / /

/ / /

/ / /

1

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits on May 31, 2011.  (AR 144.)  Plaintiff's application was denied on July 26, 2011.  (AR 79.)  Plaintiff requested reconsideration of the denial on or around October 18, 2011.  (AR 90.)  Plaintiff's request for reconsideration was denied on February 10, 2012.  (AR 93.)  Plaintiff requested a hearing on or around March 20, 2012.  (AR 99.)

On October 9, 2012, a hearing took place before administrative law judge Daniel G. Heely ("the ALJ").  (AR 28-48.)  On October 26, 2012, the ALJ issued a written decision finding Plaintiff to be not disabled.  (AR 11-22.)  Plaintiff requested a review of the ALJ's decision on or around December 14, 2012.  (AR 9.)  The Appeals Council denied Plaintiff's request for review on February 4, 2014.  (AR 1-3.)

### A.     Plaintiff's Hearing Testimony

Plaintiff testified as to the following facts at the hearing before the ALJ on October 9, 2012.  Plaintiff's highest grade of education is eleventh grade.  (AR 31.)  Plaintiff last worked in 2004 for Applied Business Solutions, where Plaintiff was a cabinet installer.  (AR 32.)

Plaintiff complains of numbness throughout his body which prevents him from working.  (AR 32.)  Plaintiff's doctor told him it was due to deterioration in the spine.  (AR 32.)  Plaintiff's doctor also said that he needed bone fusion surgery, but Plaintiff has not been scheduled to receive such a procedure.  (AR 32-33.)

Plaintiff applied for a VA service-connected disability rating, but did not receive one.  (AR 33.)  Plaintiff is on parole for a sex crime and is a registered sex offender.  (AR 33.)  Plaintiff served a six year, ten month prison term.  (AR 33.)  Plaintiff is on parole until April 2016.  (AR 34.)

Plaintiff is also bipolar and suffering from severe depression.  (AR 35.)  Plaintiff receives therapy for his mental health problems.  (AR 35.)  Plaintiff takes medication, which causes

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 11.)

dizziness. (AR 35.)

Plaintiff smokes a pack and a half of cigarettes per day. (AR 36.) Plaintiff has been diagnosed with asthma related to smoking. (AR 36.) Plaintiff's doctor advised Plaintiff to stop or reduce his smoking, but Plaintiff has not. (AR 36.) Plaintiff does not drink alcohol and does not use any other drugs. (AR 36.)

Plaintiff has lived by himself for about a year and a half. (AR 37.) Plaintiff is homeless and sleeps on the streets. (AR 37.) Plaintiff receives food stamps and buys ready-to-eat food at Save Mart. (AR 38-39.) Plaintiff spends his free time at the park. (AR 39.) Plaintiff carries a cell phone. (AR 39.)

Plaintiff has been suicidal on occasion, which he attributed to his severe depression. (AR 40.) Plaintiff has suicidal thoughts four to five times a month. (AR 41.) Plaintiff has problems focusing and concentrating. (AR 41.) Plaintiff cannot concentrate for two hour periods, eight hours a day. (AR 41.) Plaintiff could not stay on task at a simple job for two hours at a time. (AR 41.)

**B.    VE Testimony**

Howard Goldfarb testified as a vocational expert at the hearing before the ALJ on October 9, 2012 ("the VE"). (AR 42.) The VE classified Plaintiff's past work as salesperson, general hardware (light, semi-skilled, SVP 2), cleaner, housecleaner (light, unskilled, SVP 2), cabinet installer/cabinetmaker (light, semi-skilled, SVP 4 as performed by Plaintiff). (AR 43.) The VE also testified that Plaintiff would have transferable work skills from his salesperson job, which would include skills in sales, interacting with others, acting courteously and appropriately with others, sales techniques, etc. (AR 44.) The VE also identified skills in the use of basic hand and power tools. (AR 44.)

The ALJ presented the following first set of hypothetical limitations to the VE:

- Same age, education, work history and transferable skills as Plaintiff;
- Can sit, stand and walk six out of eight hours with normal breaks;
- Can lift/carry less than 10 pounds even occasionally;
- Can never climb, balance, stoop, kneel, crouch, or crawl;

3

1  • Need numerous unscheduled rest breaks;

2  • Could have less than occasional public contact; and

3  • Would not have sufficient concentration ability for even simple, routine tasks.

4 (AR 44-45.) The VE testified that a person with such hypothetical limitations could not perform
5 any work. (AR 45.)

6  The ALJ presented the following second set of hypothetical limitations to the VE:

7  • Same age, education, work history and transferable skills as Plaintiff;

8  • Could perform jobs involving simple, routine, repetitive tasks;

9  • Can have occasional public contact;

10  • Can sit, stand, and walk six out of eight hours;

11  • Can lift/carry 50 pounds occasionally and 25 pounds frequently; and

12  • Can never work around concentrated fumes, odors, dust, gases, smoke, and other
13     environmental irritants.

14 (AR 45.) The VE testified that a person with such hypothetical limitations could perform
15 Plaintiff's previous work as a cleaner and cabinet installer. (AR 45.) The VE further testified
16 that such a person could perform work as an assembler, warehouse worker, or bus person/bus
17 boy. (AR 45-46.)

18  **C.   Medical Records**

19  The administrative record includes medical records from the California Department of
20 Corrections and Rehabilitation (AR 278-282, 291-300, 399-456, 476-519), medical records from
21 Golden Valley Health Center (AR 283-290, 314-398), an August 20, 2011 Psychological
22 Disability Evaluation authored by Dr. Patricia Spivey, Psy.D (AR 301-305), an October 27, 2011
23 questionnaire filled out by by James Williamson, MS, PA-C (464), an October 28, 2011
24 questionnaire filled out by Dr. Michael S. Thomas, Ph.D (AR 465), medical records from
25 Doctors Medical Center (AR 466-474), an August 16, 2012 questionnaire filled out by Dr.
26 Michael Thomas, Ph.D (AR 475), and medical records from the Veterans Administration (AR
27 520-678). The medical records will be discussed in more detail below as pertinent to the Court's
28 analysis.

### D.     The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since May 31, 2011, the application date;
- Plaintiff has the following severe impairments: degenerative disc disease and an affective disorder;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 4040, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently and sit, stand, and walk 6 hours in an 8-hour workday.  He can never work around concentrated fumes, odors, dusts, cases, or environmental irritants.  Mentally, Plaintiff can perform simple repetitive tasks and tolerate occasional public contact;
- Plaintiff is capable of performing past relevant work as a cleaner and cabinet installer.  This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity;
- Plaintiff has not been under a disability, as defined in the Social Security Act, since May 31, 2011, the date the application was filed.

(AR 16-22.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## III.

## DISCUSSION AND ANALYSIS

### A. The ALJ Erred in His Analysis of the Medical Evidence

Plaintiff argues that the ALJ erred in rejecting the opinion of treating physician Robert Thomas, M.D. and non-treating physician Dr. Spivey, while accepting the opinion of non-treating, non-examining physician Dr. Ikawa.

#### 1. Legal Standards for the Analysis of Medical Evidence

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("...generally a treating physician's opinion carries the most weight of the various types of physician testimony.") "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984))

"[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830 (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

"The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Id. (citing Pitzer, 908 F.2d at 506). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

### 2. Dr. Ikawa, Dr. Spivey and Dr. Thomas' Medical Opinions

In a report dated February 10, 2012, non-treating, non-examining physician Dr. G. Ikawa wrote:

> Claimant retains the ability to understand, remember and carry out simple work related tasks in a work setting with reduced interpersonal contact. There are no significant limitations in the ability to complete or adapt to the requirements of normal work.

(AR 72.)

Dr. Patricia Spivey, Psy.D authored an August 20, 2011 Psychological Disability Evaluation. (AR 301-304.) Dr. Spivey was a non-treating, examining medical source. Dr. Spivey opined that Plaintiff suffered "mild" impairment in the ability to maintain adequate pace or persistence to complete 1-2 step simple repetitive tasks, the ability to maintain adequate attention/concentration, and the ability to interact appropriately with co-workers, supervisors, and the public on a daily basis. (AR 303.) Dr. Spivey further opined that Plaintiff suffered "moderate" impairment in the ability to maintain adequate pace or persistence to complete

complex tasks and the ability to maintain emotional stability/predictability. (AR 303.) Dr. Spivey opined that Plaintiff suffered "marked" impairment in the ability to adapt to changes in job routine and the ability to withstand the stress of a routine work day. (AR 303.)

Dr. Thomas authored two opinions in the record. There appears to be no dispute between the parties that Dr. Thomas was a treating physician. On October 28, 2011, Dr. Thomas completed a "Medical Source Statement." (AR 465.) In this form, Dr. Thomas indicated that Plaintiff suffered from "extreme" limitations in the ability to relate and interact with supervisors and co-workers, the ability to maintain concentration and attention for at least two hour increments, and the ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity. (AR 465.) Dr. Thomas indicated that Plaintiff suffered from "marked" limitations in the ability to understand, remember, and carry out an extension variety of technical and/or complex job instructions and the ability to understand, remember, and carry out simple one-or-two job instructions. Dr. Thomas indicated that Plaintiff suffered from "moderate to marked" limitations in the ability to deal with the public, and moderate limitations in the ability to handle funds.

On August 16, 2012, Dr. Thomas completed a second "Medical Source Statement." (AR 475.) Dr. Thomas changed his evaluation of Plaintiff's ability to relate and interact with supervisors and co-workers from an "extreme" limitation to a "marked" limitation. (AR 465, 475.) The ability to deal with the public changed from "moderate to marked" to "extreme." (AR 465, 475.) Plaintiff's ability to handle funds went from "moderate" to he can handle his own funds." (AR 465, 475.)

3. The ALJ's Analysis of the Medical Evidence

In evaluating the medical evidence, the ALJ wrote:

> In assessing the residual functional capacity, the undersigned accords greatest weight to the opinion of Dr. Ikawa because his conclusions are most consistent with the entirety of the evidence. The undersigned gives little weight to the opinions of Dr. Thomas and Dr. Spivey as they appear primarily based on the claimant's self-reports. In addition, their opinions are inconsistent with the claimant's activities discussed in Findings No. 3, e.g., the ability to attend class 4 to 6 hours per day, 5 days per week.

(AR 20.)

With respect to Plaintiff's credibility, the ALJ wrote:

> ...the claimant's and Ms. Curtis' statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Contrary to the claimant's testimony, the records do not reveal any recommendations for fusion surgery. As to his psychological complaints, the mental status examinations from May 2011 at the various providers are extremely inconsistent. The VA records demonstrate no mental status abnormalities but only two weeks later, at the parole office, extensive findings were noted. Days later at Golden Valley Health Center, there were again nearly no clinical abnormalities. The claimant's credibility is also undermined by Dr. May's August 2012 note indicating possible medication noncompliance and the claimant's reluctance to engage in stable outpatient care (Exhibit 18F, p.93). Finally, the claimant's ability to engage in an extensive array of activities is at odds with his allegation of disability. The claimant has a demonstrated ability to attend class 4 to 6 hours per day, 5 days per week at the parole center. There, he generally works on math on a computer program, or participates in vocabulary and English lessons. He has no problems with personal care and is able to wash his clothes at a Laundromat, shop in stores, pay bills, and count change (Exhibit 9E).

(AR 20.)

### 4. The ALJ Erred in Rejecting Dr. Spivey's Medical Opinions

The ALJ cited two reasons to reject the opinions of Dr. Thomas and Dr. Spivey: 1) because the opinions appeared to be primarily based on Plaintiff's self-reports, and 2) the opinions were inconsistent with Plaintiff's daily activities.

"An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)).

Dr. Spivey's evaluation indicates that she relied upon Plaintiff's subjective complaints to some degree. Under "Chief Complaint," Dr. Spivey wrote: "**Per Mr. Hart**, he has anxiety, nervousness, and hears voices." (AR 301 (emphasis added).) Under "Sources of Information and Documents Reviewed," the only record listed by Dr. Spivey was an "[e]valuation from Dept. of Corrections dated 5/19/11." (AR 301.) However, Dr. Spivey also administered several tests

9

and stated that Plaintiff performed poorly on memory tests and timed tests. (AR 302-303.) Accordingly, it does not appear that Dr. Spivey's opinions can be discounted solely because of Plaintiff's lack of credibility.

Furthermore, it does not appear that Dr. Spivey's opinions were inconsistent with Plaintiff's daily activities. Plaintiff's reported daily activities included living on the street, purchasing ready-to-eat food at Save Mart, spending free time at public parks, and occasionally doing laundry. None of these daily activities are inconsistent with the limitations expressed in Dr. Spivey's report. The ALJ also stated that Dr. Spivey's opinions were inconsistent with Plaintiff attending class three to six hours per day, five days a week. (AR 190.) However, there is very little evidence regarding the content or strenuousness of these classes. The record indicates that it involves reading and typing (AR 190) and using a computer (AR 194). The record lacks evidence that these activities are inconsistent with the limitations expressed in Dr. Spivey's report. Since both of the reasons cited by the ALJ to reject Dr. Spivey's opinions were not supported by substantial evidence, the Court finds that the ALJ erred.

On the other hand, the ALJ's reasons for rejecting Dr. Thomas' opinions were supported by substantial evidence. There is substantial evidence that Dr. Thomas relied on Plaintiff's subjective complaints. Plaintiff argues that the ALJ erred because there was no indication in Dr. Thomas' reports that Dr. Thomas relied, "to a large extent" on Plaintiff's self-reports as opposed to Dr. Thomas' own objective clinical observations.

Dr. Thomas' brief and perfunctory questionnaires were utterly devoid of any detailed analysis of any objective clinical observations. Dr. Thomas only provided single-word responses to the form questionnaire. Dr. Thomas did not cite any clinical observations supporting his opinions. Dr. Thomas' failure to support his opinions with objective findings is in and of itself substantial evidence that he relied on Plaintiff's subjective self-reports. See Salchenberg v. Colvin, 534 Fed. Appx. 586, 588 (9th Cir. 2013) (finding that doctor relied heavily on claimant's self-reports where "Dr. Alvord did not support his opinion with his own observations."). Plaintiff does not contest the ALJ's analysis of Plaintiff's credibility.

///

It is also worth noting that Dr. Thomas' reports are internally inconsistent. Dr. Thomas' October 2011 report is inconsistent with Dr. Thomas' August 2012 report, with no apparent explanation. Some of these differences are quite substantial, such as Dr. Thomas' opinion in October 2011 that Plaintiff was moderately impaired in his ability to handle funds to his August 2012 opinion which identified no impairment in the same category. (AR 465, 475.) The ALJ cited the inconsistencies in the mental status examinations in his written opinion. (AR 20.) Accordingly, the Court finds that the ALJ did not err in rejecting Dr. Thomas' opinions.

### B. Remand for Further Administrative Proceedings

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman, 211 F.3d at 1178). "The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (citing Harman v. Apfel, 211 F.3d 1172, 1174, 1178 (9th Cir. 2000)).

Further issues must be resolved before a determination of disability can be made. Even if Dr. Spivey's opinions were credited as true, the VE was not presented with a hypothetical scenario that accurately reflected Plaintiff's residual functional capacity, with the limitations opined by Dr. Spivey. Accordingly, the Court will remand for further administrative proceedings.

///

///

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ erred by failing to provide adequate reasons to reject Dr. Spivey's opinions regarding Plaintiff's mental impairments. The Court finds that further administrative proceedings are necessary to resolve outstanding issues before a determination of disability can be made.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's appeal from the administrative decision of the Commissioner is PARTIALLY GRANTED;

2. This action is REMANED to the Commissioner for further administrative proceedings;

3. JUDGMENT is entered in favor of Plaintiff Donald William Hart and against Defendant Commissioner of Social Security; and

4. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **March 16, 2015**

UNITED STATES MAGISTRATE JUDGE